**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In Re: Tupperware Brands Corporation
Securities Litigation

BEN LAPIN and SRIKALAHASTI M.
VAGVALA,

            Plaintiffs,

v.                                                                      Case No:   6:20-cv-357-Orl-31GJK

TUPPERWARE BRANDS
CORPORATION, PATRICIA A.
STITZEL, CASSANDRA HARRIS,
MICHAEL POTESHMAN, E.V. (RICK)
GOINGS and LUCIANO RANGEL,

            Defendants.

## ORDER

This matter comes before the Court without a hearing on Defendants' Motions to Dismiss (Docs. 70, 71) Plaintiff's Amended Complaint (Doc. 62).

### I.     Background[1]

Defendant Tupperware Brands Corporation ("Tupperware") is a Delaware corporation that is headquartered in Orlando, Florida and has its securities traded on the New York Stock Exchange. (Doc. 62 ¶ 19). Defendants Patricia A. Stitzel ("Stitzel"), Cassandra Harris ("Harris"), Michael Poteshman ("Poteshman"), and E.V. Goings ("Goings") are all former executive level

---

[1] This factual summary is based on the allegations contained in the Amended Complaint (Doc. 62) and "in reviewing motions to dismiss we accept as true the facts stated in the complaint and all reasonable inferences therefrom." *Jackson v. Okaloosa County., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

Tupperware officials who signed financial disclosures and made public statements about Tupperware's financial status. (*Id.* ¶¶ 21–24). Defendant Luciano Rangel ("Rangel") was Tupperware's Group President for Latin America from March 2017 through January 2020. (*Id.* ¶¶ 25–26).

Tupperware does direct-to-consumer product marketing and sales through several brands, including Fuller, a cosmetics seller that makes a majority of its sales in Mexico as "Fuller Mexico." (*Id.* ¶ 20, 36). After Fuller experienced declining sales from 2011 through 2017, Tupperware filed a Form 10-Q on August 1, 2017 announcing that it was impairing Fuller's goodwill by $62.9 million. (*Id.* ¶ 38–39). In 2017, Tupperware aimed to help Fuller improve its sales by appointing Rangel as its Group President for Latin America and Evaristo Hernandez ("Hernandez") as Fuller Mexico's managing director. (*Id.* ¶ 43).

To ostensibly improve Fuller's performance, Hernandez implemented a scheme where Fuller would increase product shipments to its sales force, recognize the revenues from those shipments as sales, but would not account for any returned shipments that were not sold to end-buyers. (*See id.* ¶¶ 44–46, 49, 55, 60). According to some former employees, Rangel visited Fuller Mexico and held a town hall meeting and a quarterly sales meeting where he told staff to "keep things 'as they were'" and "do what the company required." (*Id.* ¶¶ 70–72).

Because of the scheme, falsified sales data made up between 40% and 60% of Fuller's reported revenue.[2] (Doc. 62 ¶¶ 51, 78). Between January 2018 and August 2019, Tupperware issued financial and performance statements which included Fuller's sales data through Form 8-K, Form 10-K, and Form 10-Q filings and company conference calls. (*Id.* ¶¶ 79–110). Defendants

---

[2] Fuller's total revenues in 2017 "represented between four and nine percent of Tupperware's more than $2.2 billion in net sales." (Doc. 70 at 5 (citing Doc. 70-3 at 13; Doc. 70-4 at 3)).

Stitzel, Goings, Poteshman, and Harris were all involved in either signing the forms or making the statements at different times. (*Id.* ¶¶ 81–83, 88–89, 92–93, 96–97, 100, 102, 104, 105, 109). On October 30, 2019, Tupperware filed a Form 8-K announcing that it was impairing $17.5 million of Fuller's goodwill, resulting in a 35% decrease in Tupperware's stock price. (*Id.* ¶¶ 159, 161). Tupperware subsequently terminated Hernandez, replaced Stitzel as CEO, and announced that Rangel had left the company. (*Id.* ¶¶ 167–68, 170). On February 24, 2020, Tupperware announced that it was impairing Fuller's tradename by $20.3 million, resulting in an additional 45% decrease in Tupperware's stock price. (*Id.* ¶¶ 173–74).

In response to the decline in Tupperware's stock prices, several plaintiffs filed class action lawsuits. The lawsuits were consolidated under this case with the court-appointed Lead Plaintiff, Srikalahasti Vagvala ("Vagvala"). (Doc. 61). Vagvala filed an Amended Complaint on July 31, 2020. (Doc. 62). Vagvala alleges that the filings and statements issued between January 2018 and July 2019 contained material misrepresentations because they contained fraudulent financial data from Fuller and failed to impair Fuller's goodwill. (*Id.* ¶¶ 112–58). Vagvala asserts a securities fraud claim under § 10(b) of the Securities Exchange Act and Rule 10b-5 against Tupperware only and a control person liability claim under § 20(a) of the Securities Exchange Act against Stitzel, Goings, Poteshman, Harris, and Rangel.[3] (*Id.* ¶ 235, 247).

Defendants Tupperware, Stitzel, Goings, and Harris filed a Motion to Dismiss (Doc. 70) that seeks dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. Defendant Rangel filed a separate Motion to Dismiss (Doc. 71) seeking dismissal on the same grounds. In ruling on these Motions, the Court considered

---

[3] 15 U.S.C. § 78j, 78t(a); 17 C.F.R. § 240.10b-5.

Vagvala's Omnibus Response in Opposition (Doc. 74) and Defendants' replies in support of their Motions (Docs. 78, 79).

## II.    Legal Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g.*, *Jackson*, 21 F.3d at 1534, and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### III.    Analysis

#### A.  Violation of Section 10(b) and Rule 10b-5 (Count I)

Defendants argue that Vagvala failed to state a claim for securities fraud under § 10(b) of the Securities Exchange Act of 1934. In addition to the pleading requirements of Rule 8, alleged violations of § 10(b) that sound in fraud must also satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010). The Private Securities Litigation Reform Act (PSLRA) also requires private plaintiffs seeking monetary recovery to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).

#### i.   Misrepresentation

Defendants argue that Vagvala failed to state a misrepresentation claim against Defendant Tupperware in violation of § 10(b) and Rule 10b-5(b). To state a misrepresentation claim,

> a plaintiff must allege: (1) the existence of a material misrepresentation (or omission), (2) made with scienter (i.e., "a wrongful state of mind"), (3) in connection with the purchase or sale of any security, (4) on which the plaintiff relied, and (5) which was causally connected to (6) the plaintiff's economic loss.

*Thompson*, 610 F.3d at 633. Defendants assert that Vagvala failed to plead facts establishing a strong inference of scienter with respect to Tupperware.

Vagvala only asserts his § 10(b) claim against Tupperware and not any of the individual defendants.   The Eleventh Circuit has recognized that it is possible to state a § 10(b) claim against a corporate defendant alone. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008) ("Even though [the complaint] failed to plead scienter adequately for any of the individual defendants, the amended complaint could, in theory, still create a strong inference that the corporate defendant . . . acted with the requisite state of mind."). Corporations, however, have no state of mind of their own, so "the scienter of their agents must be imputed to them." *Id.* To

determine whether a corporate agent's scienter can be imputed to the corporation in a misrepresentation claim, a court must "look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like)[.]". *Id.* (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)). To adequately plead corporate scienter, the complaint must create a strong inference that a corporate official was "*responsible for* issuing the allegedly false public statements *and* [was] aware of the alleged fraud." *Id.* at 1254–55 (emphasis added).

Defendants argue that Vagvala failed to allege facts that would support imputing the scienter of any Tupperware official to Tupperware. To survive dismissal, the Complaint must establish that an official at Tupperware had the requisite scienter *and* was responsible for the alleged false public statements by either making or authorizing the statements or furnishing the fraudulent information for inclusion in the statements. The Tupperware officials who made the statements at issue are Goings, Harris, Poteshman, and Stitzel (hereinafter collectively referred to as "the Makers"). (Doc. 62 ¶¶ 81–83, 88, 89, 92, 93, 96, 97, 100, 102, 104, 105, 109). The Complaint does not allege any facts supporting an inference that any of the Makers were aware of the fraud at Fuller.[4]

Because the Makers did not act with scienter, Vagvala must identify some other official who both had the requisite scienter and was somehow "responsible" for the false public statements at issue. The only officials that Vagvala argues had knowledge of the fraudulent practices at Fuller are Rangel (Doc. 62 ¶¶ 70–72) and Hernandez (*Id.* ¶ 44).[5] The Complaint alleges that Hernandez

---

[4] Vagvala does not argue that they were aware of the fraud in his Response.

[5] The Complaint also alleges that Tupperware's Vice President of Operations, Keith Haggerty was aware of the fraud (*Id.* ¶¶ 57, 69, 73–75), but Vagvala does not argue that he was

had scienter and Defendants do not dispute this point. The allegations with respect to Rangel, however, are lacking. The Complaint contains a conclusory statement that Rangel "directly knew of the fraudulent sales scheme" without any supporting factual allegations. (*Id.* ¶ 79). The only allegations detailing Rangel's involvement with Fuller are that he participated in meetings where he directed staff to "keep things 'as they were'" and "do what the company required." (*Id.* ¶¶ 70–71). These facts do not support a reasonable inference that Rangel knew about Fuller's fraudulent sales practices, let alone establish a strong inference of scienter.

Even if the Court were to find that Vagvala sufficiently pled scienter with respect to either Rangel or Hernandez, he still needs to establish that one of them was responsible for the false statements. The alleged facts show at most that Rangel headed Tupperware's Latin American operations, that Hernandez headed Fuller Mexico, that they knew about fraudulent sales practices at Fuller which generated false performance data, and that the Makers issued public statements which incorporated that false data.[6] The Complaint, however, does not allege how the false data made it from Fuller to Tupperware and eventually into the statements at issue or whether Rangel or Hernandez had any hand in preparing those statements.[7]

Vagvala must allege more to survive dismissal. The cases applying the corporate scienter standard from *Mizzaro* make it clear that there must be some factual allegation specifying that an

---

responsible for the false statements. Neither Hernandez nor Haggerty are defendants in this case.

[6] Again, there is no allegation that the Makers knew these statements to be false at the time they were made.

[7] Vagvala argues that Rangel and Hernandez were responsible for the false public statements because they "furnished" the fraudulent data that was included in those statements. Vagvala does not point to any factual allegations supporting this contention, but instead asserts that it would be "implausible" and "absurd" to assume that another employee could bypass Rangel or Hernandez in transmitting this financial data to the Makers. (Doc. 74 at 20–21). The Court will not assume facts that Vagvala failed to allege in his Complaint.

official with scienter had some involvement in making, crafting, or furnishing the public statements at issue. *See SEC v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1347, 1360 (S.D. Fla. 2013) (complaint adequately pled corporate scienter where lower level official with scienter furnished information "he knew would be relied on in preparing" the public statements at issue); *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 403 (D. Del. 2010) (misrepresentation claim dismissed where complaint alleged that officials with scienter headed division where fraudulent information originated but failed to allege any facts specifying that officials supplied the information for the public statements at issue); *In re AnthroCare Sec. Litig.*, 726 F. Supp. 2d 696, 728 (W.D. Tex. 2010) (complaint failed to allege corporate scienter where it did not include any factual allegations that officials with scienter "provided the information, drafted the language, or authorized [the false information's] inclusion" in or link the officials in any way to the public statements).

"It is not enough to establish fraud on the part of a corporation that one officer makes a false statement that another knows to be false." *Southland*, 365 F.3d at 366 (quoting *In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)). Therefore, because the Complaint fails to plead scienter with respect to Rangel or any facts detailing how Hernandez or Rangel were responsible for the alleged misstatements, Vagvala has failed to plead scienter with respect to Tupperware and his misrepresentation claim must be dismissed.[8]

### ii. Scheme Liability

---

[8] Vagvala alternatively argues that Hernandez and Rangel were "responsible" for the false public statements because, but for their implementation of the fraudulent practices, the public statements would not be false. This argument is clearly not supported by *Mizzaro*. An official with scienter must have some level of involvement with the actual statements. It is not enough that an official's actions simply caused inaccuracies in a public statement.

Vagvala argues in his Response that even if the misrepresentation claim fails, the Complaint can survive dismissal because, in addition to pleading a misrepresentation claim under Rule 10b-5(b), he also pled a scheme liability claim under Rule 10b-5(a) and (c). Vagvala further argues that Defendants waived any argument for dismissal by failing to discuss scheme liability in their Motions. (Doc. 74 at 26–32). However, Defendants addressed this argument in their reply and, "[a]lthough district courts ordinarily do not consider new arguments raised in reply briefs, such new arguments are properly considered if they address unexpected issues raised for the first time by the opposing party's response." *Vargas v. Michaels Stores, Inc.*, No. 8:16-cv-1949-T-33JSS, 2017 WL 3174058, at \*2 (M.D. Fla. July 26, 2017) (citations omitted). Whether Vagvala's discussion of a scheme liability claim raises an "unexpected issue" goes hand-in-hand with whether he adequately pled scheme liability in his Complaint.

The main difference between a 10b-5(b) misrepresentation claim and a 10b-5(a) and (c) scheme liability claim is that, while 10b-5(b) involves "deceptive statements," 10b-5(a) and (c) scheme liability involves "deceptive conduct." *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 856 (11th Cir. 2016) (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 n.29 (3d Cir. 2011), *abrogated on other grounds by Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)). To plead scheme liability, a plaintiff must allege "intentional or willful conduct *designed to deceive or defraud investors* by controlling or artificially affecting the price of securities." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1306 (N.D. Ala. 2019) (quoting *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1273 (11th Cir. 2016)) (emphasis added).

Vagvala asserts that because the Complaint alleges a fraudulent scheme and the scheme influenced the price of Tupperware's securities, he has sufficiently pled scheme liability under

10b-5(a) and (c). However, the Complaint does not contain any factual allegations supporting an inference that the fraudulent sales practice was "designed to deceive or defraud investors." At most, the Complaint can be read to suggest that Hernandez implemented the scheme in response to a directive to improve Fuller's sales. Nothing in the Complaint supports the inference that Hernandez or Rangel acted with the purpose of influencing the price of Tupperware's securities. While the Complaint may allege that fraud occurred, § 10(b) "does not reach all commercial transactions that are fraudulent and affect the price of a security in some attenuated way." *Stoneridge Inv. Partners, LLC. v. Sci.-Atlanta*, 552 U.S. 148, 162 (2008).

Therefore, Vagvala's scheme liability claim must be dismissed.

### B.  Violation of Section 20(a) (Count II)

Vagvala also asserts a control person liability claim under § 20(a) of the Securities Exchange Act. A § 20(a) claim is for secondary liability only and "cannot exist in absence of a primary violation." *Galectin Therapeutics*, 843 F.3d at 1276 (quoting *Southland*, 365 F.3d at 383)). Because Vagvala's Complaint failed to allege a primary violation under § 10(b), his § 20(a) claim also fails.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss (Docs. 70, 71) are

**GRANTED**. Plaintiff's Amended Complaint (Doc. 62) is **DISMISSED** without prejudice. If

Plaintiff wishes to file an amended complaint, he may do so within twenty-one (21) days of the

date of this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 25, 2021.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party