**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In Re: Tupperware Brands
Corporation Securities Litigation

BEN LAPIN and SRIKALAHASTI M. VAGVALA,

Plaintiffs,

v. Case No: 6:20-cv-357-GAP-GJK

TUPPERWARE BRANDS CORPORATION, PATRICIA A. STITZEL, CASSANDRA HARRIS, MICHAEL POTESHMAN, E.V. (RICK) GOINGS and LUCIANO RANGEL,

Defendants.

---

**ORDER**

This matter is before the Court on Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 86). In ruling on this motion, the Court considered Plaintiff's Response in Opposition (Doc. 89) and Defendants' Reply (Doc. 91).

## I. Background[1]

Defendant Tupperware Brands Corporation ("Tupperware") is a Delaware corporation that is headquartered in Orlando, Florida and has its securities traded on the New York Stock Exchange. Defendants Patricia A. Stitzel ("Stitzel"), Cassandra Harris ("Harris"), Michael Poteshman ("Poteshman"), and E.V. Goings ("Goings") are all former executives at Tupperware who signed financial disclosures and made public statements about Tupperware's financial status. Defendant Luciano Rangel ("Rangel") was Tupperware's Group President for Latin America from March 2017 through January 2020.

Overall, the facts alleged in the Second Amended Complaint largely match those alleged in the First.[2] Briefly summarized, Tupperware does direct-to-consumer product marketing and sales through several brands. One of these brands is Fuller, a cosmetics seller that makes most of its sales in Mexico as "Fuller Mexico." In response to Fuller's lagging sales performance, Tupperware appointed Rangel as Tupperware's Group President for Latin America and Evaristo Hernandez ("Hernandez") as Fuller Mexico's managing director. To

---

[1] This factual summary is based on the allegations contained in the Second Amended Complaint (Doc. 82) and "in reviewing motions to dismiss we accept as true the facts stated in the complaint and all reasonable inferences therefrom." *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

[2] *See* Doc. 81 at 1–4 for a more detailed factual summary.

improve Fuller's performance, Hernandez allegedly implemented a fraudulent sales scheme that resulted in 40% to 60% of Fuller's reported revenue being false.

Tupperware issued several financial and performance statements incorporating Fuller's sales data. In 2019, however, Tupperware issued a statement impairing Fuller's goodwill, resulting in a 35% decrease in Tupperware's stock price. In 2020, Tupperware announced another impairment of Fuller's goodwill, causing Tupperware's stock price to decrease by 45%. In response to the decline in Tupperware's stock, several plaintiffs filed class action lawsuits. The lawsuits were consolidated into this case with the court-appointed Lead Plaintiff, Srikalahasti Vagvala ("Vagvala"). Doc. 61.

Vagvala filed an Amended Complaint on July 31, 2020. Doc. 62. The Court dismissed the Amended Complaint without prejudice following Defendants' motions thereto. Doc. 81. Vagvala filed a Second Amended Complaint on February 16, 2021, where he asserts a claim for securities fraud under § 10(b) of the Securities Exchange Act and Rule 10b-5 against Tupperware and Rangel (Count I) and a control person liability claim under § 20(a) of the Securities Exchange Act against Stitzel, Goings, Poteshman, Harris, and Rangel (Count II). Defendants have filed a joint Motion to Dismiss (Doc. 86) seeking to dismiss all counts of the Second Amended Complaint.

## II. Legal Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g.*, *Jackson*, 21 F.3d at 1534, and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

## III. Analysis

### A. Violation of Section 10(b) and Rule 10b-5 (Count I)

Defendants argue that the Second Amended Complaint fails to state a claim for securities fraud under § 10(b) of the Securities Exchange Act of 1934. In addition to the pleading requirements of Rule 8, alleged violations of § 10(b) that sound in fraud must also satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010). The Private Securities Litigation Reform Act (PSLRA) also requires private plaintiffs seeking monetary recovery to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).

#### *i. Misrepresentation*

Defendants argue that the Second Amended Complaint fails to state a misrepresentation claim for a violation of § 10(b) and Rule 10b-5(b). To state a misrepresentation claim,

> a plaintiff must allege: (1) the existence of a material misrepresentation (or omission), (2) made with scienter (i.e., "a wrongful state of mind"), (3) in connection with the purchase or sale

> of any security, (4) on which the plaintiff relied, and (5) which was causally connected to (6) the plaintiff's economic loss.

*Thompson*, 610 F.3d at 633. The parties dispute whether the Second Amended Complaint adequately alleges scienter as to Rangel and Tupperware.[3]

The Court begins with Rangel. The Second Amended Complaint makes the same conclusory allegations that Rangel knew about the fraud at Fuller and that Rangel participated in meetings where he said that "Tupperware wanted to keep things 'as they were'" and "do what the company required." Doc. 82 ¶ 75. The only change to this allegation is that instead of saying that Rangel was "addressing the fake sales," the Complaint now says that he was "referring to the fake sales scheme." *Compare id. with* Doc. 62 ¶ 70. This allegation does not specify how these statements related to the alleged fraud and therefore does not support a reasonable inference that Rangel knew about Fuller's fraudulent sales practices, let alone establish a strong inference of scienter.

The only new allegation pertaining to Rangel's state of mind comes from an anonymous former Fuller employee identified as Former Employee 4. The Complaint alleges that this employee attended a meeting where a Fuller director stated that Rangel and Hernandez "directed the fake sales scheme." Doc. 82 ¶ 72.

---

[3] Defendants briefly state that the Fuller's accounting methods could not have been "fraudulent per se" unless they were done with the purpose of misleading the investors. The thrust of their argument, however, addresses the element of scienter, not whether the statements at issue were accurate.

The Complaint does not specify what the director said at the meeting and does not detail how the director arrived at this conclusion. The fact that the allegation relies on double hearsay raises questions as to the sufficiency of the allegations of fraud here. That issue is compounded by the fact that the Complaint does not even describe the content of the hearsay itself. The allegations as to Rangel's state of mind fall well below the specificity requirements of Rule 9 and the PSLRA. Therefore, the misrepresentation claim against Rangel will be dismissed.

The Court must then consider whether the Second Amended Complaint sufficiently alleges scienter as to Tupperware. It is possible to state a § 10(b) claim against a corporate defendant alone. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008) ("Even though [the complaint] failed to plead scienter adequately for any of the individual defendants, the amended complaint could, in theory, still create a strong inference that the corporate defendant . . . acted with the requisite state of mind."). Corporations, however, have no state of mind of their own, so "the scienter of their agents must be imputed to them." *Id.* To determine whether a corporate agent's scienter can be imputed to the corporation in a misrepresentation claim, a court must "look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like)." *Id.* (quoting *Southland Sec. Corp. v. INSpire Ins.*

*Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)). To adequately plead corporate scienter, the complaint must create a strong inference that a corporate official was both "*responsible for* issuing the allegedly false public statements *and* [was] aware of the alleged fraud." *Id.* at 1254–55 (emphasis added).

The Complaint does not allege that any of the makers of the statements at issue—Goings, Harris, Poteshman, and Stitzel—were aware of the alleged fraud at Fuller. Nor does Vagvala argue otherwise in his response. Vagvala instead contends that Rangel and Hernandez's scienter can be imputed to Tupperware because they were responsible for the statements at issue. However, since the Complaint fails to adequately allege that Rangel acted with scienter, his state of mind cannot support corporate scienter as to Tupperware.[4]

Vagvala claims that Hernandez acted with scienter and that his state of mind can be imputed to Tupperware because he was "responsible for" the statements at issue. Defendants argue that the Complaint fails to allege scienter as to Hernandez and fails to show that he was responsible for the statements in a way that could impute his state of mind to Tupperware. In its prior order, the

[4] In order to successfully impute scienter as to Rangel, the factual allegations must specifically address Rangel's responsibilities as Group President of Latin America. Vagvala asks the Court to assume that Rangel must have had a hand in transmitting fraudulent data to the makers because of responsibilities in a similar job. *See* Doc. 82 ¶ 89. But anonymous allegations regarding the practices of other Tupperware branches and Rangel's likely responsibilities do not rise to the level of specificity necessary to plead corporate scienter.

Court did not analyze whether the First Amended Complaint alleged scienter as to Hernandez because Defendants did not dispute that point. The Court need not reach that issue here because, even if Hernandez did act with scienter, the Complaint fails to establish that he was responsible for the statements in the way that the law requires.

To impute scienter from an officer to a corporate defendant, there must be some factual allegation specifying that an official with scienter had some involvement in making, crafting, or furnishing the public statements at issue. *See SEC v. City of Miami*, 988 F. Supp. 2d 1343, 1347, 1360 (S.D. Fla. 2013) (complaint adequately pled corporate scienter where lower-level official with scienter furnished information "he knew would be relied on in preparing" the public statements at issue); *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 403 (D. Del. 2010) (misrepresentation claim dismissed where complaint alleged that officials with scienter headed division where fraudulent information originated but failed to allege any facts specifying that officials supplied the information for the public statements at issue); *In re AnthroCare Sec. Litig.*, 726 F. Supp. 2d 696, 728 (W.D. Tex. 2010) (complaint failed to allege corporate scienter where it did not include any factual allegations that officials with scienter "provided the information, drafted the language, or authorized [the

false information's] inclusion" in or link the officials in any way to the public statements).

Vagvala asks the Court to infer that Hernandez furnished the false numbers to be included in the statements at issue. In support, Vagvala points to Hernandez's senior role at Fuller and the allegation that Hernandez "approved the sales figures before they could be furnished to corporate headquarters in Orlando." Doc. 82 ¶¶ 84–85. But these allegations do not detail Hernandez's role in preparing the financial statements and whether he had any hand in supplying those figures for inclusion in the public statements. Indeed, this simply speaks to his position as an officer at Fuller and does not support imputing his state of mind to Tupperware.[5]

Vagvala also argues that he only needs to allege that, but for Hernandez's role in the fraudulent scheme, the statements at issue would have been accurate. The Court already rejected this argument and Vagvala presents no basis for reconsideration. *See* Doc. 81 at 8 n.8. The Complaint fails to connect Hernandez to the statements at issue in the direct way that *Mizzaro* requires. And "[i]t is not enough to establish fraud on the part of a corporation that one officer makes a

[5] *SEC v. City of Miami* is inapposite. The SEC successfully pleaded corporate scienter because it specifically alleged that a lower-level officer directly prepared and supplied the fraudulent figures with the knowledge that they would be relied on in preparing the misstatements. *City of Miami*, 988 F. Supp. 2d at 1347.

false statement that another knows to be false." *Southland*, 365 F.3d at 366 (quoting *In re Apple Comput., Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)). Therefore, Vagvala's misrepresentation claims will be dismissed.

*ii. Scheme Liability*

Defendants also seek to dismiss Count I to the extent that it asserts a scheme liability claim under Rule 10b-5(a) and (c). The main difference between a 10b-5(b) misrepresentation claim and a 10b-5(a) and (c) scheme liability claim is that, while 10b-5(b) involves "deceptive statements," 10b-5(a) and (c) scheme liability involves "deceptive conduct." *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 856 (11th Cir. 2016) (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 n.29 (3d Cir. 2011), *abrogated on other grounds by Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)). To plead scheme liability, a plaintiff must allege "intentional or willful conduct *designed to deceive or defraud investors* by controlling or artificially affecting the price of securities." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1306 (N.D. Ala. 2019) (quoting *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1273 (11th Cir. 2016)) (emphasis added).

The Court dismissed the First Amended Complaint's scheme liability claim because it failed to allege any facts indicating that the fraud at Fuller was carried out with the purpose of deceiving or defrauding Tupperware's investors. The Second Amended Complaint does nothing to cure this defect. Vagvala first

attempts to argue that Tupperware perpetrated the scheme with the fraudulent intent to influence its own share prices. However, Tupperware is a corporation without a state of mind and could not be liable for a fraudulent scheme absent some support for corporate scienter. *See Mizzaro*, 544 F.3d at 1254.

Vagvala also argues that, because Rangel and Hernandez had had no personal motive in pursuing the fraud, they must have acted with the purpose of influencing the price of Tupperware's shares. Without any allegations supporting that argument, such a conclusion is far too speculative to support a fraudulent scheme claim.[6] Therefore, Count I of the Second Amended Complaint will be dismissed.

**B. Violation of Section 20(a) (Count II)**

Because the Second Amended Complaint fails to plead a primary violation under § 10(b), Vagvala's control person liability claim under § 20(a) will also be dismissed. *Galectin Therapeutics*, 843 F.3d at 1276 (A § 20(a) claim is for secondary liability only and "cannot exist in absence of a primary violation.") (quoting *Southland*, 365 F.3d at 383).

---

[6] Aside from being speculative, the Court is uncertain what exactly Vagvala seeks to achieve with this argument. He contends that Hernandez and Rangel would not have risked their careers for some personal benefit but would risk their careers for the specific purpose of increasing Tupperware's stock price. This contention is both totally unsupported and nonsensical.

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendants' Joint Motion to Dismiss (Doc. 86) is **GRANTED**. Plaintiff's Second Amended Complaint (Doc. 82) is **DISMISSED** without prejudice. If Plaintiff wishes to file another amended complaint, he must do so within twenty-one days of the date of this order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 9, 2021.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party