**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In Re: Tupperware Brands Corporation Securities Litigation

BEN LAPIN and SRIKALAHASTI M. VAGVALA,

Plaintiffs,

v. Case No: 6:20-cv-357-GAP-GJK

TUPPERWARE BRANDS CORPORATION,
PATRICIA A. STITZEL,
CASSANDRA HARRIS,
MICHAEL POTESHMAN,
E.V. (RICK) GOINGS and
LUCIANO RANGEL

Defendants.

---

**ORDER**

This matter is before the Court on Defendants' Motion to Dismiss the Third Amended Complaint (Doc. 98). In ruling on this Motion, the Court also considered Plaintiff's Response in Opposition (Doc. 99) and Defendants' Reply (Doc. 100).

**I. Background**

Defendant Tupperware Brands Corporation ("Tupperware") is a Delaware corporation that is headquartered in Orlando, Florida and has its securities traded on the New York Stock Exchange. Defendants Patricia A. Stitzel ("Stitzel"),

Cassandra Harris ("Harris"), Michael Poteshman ("Poteshman"), and E.V. Goings ("Goings") are all former executives at Tupperware who signed financial disclosures and made public statements about Tupperware's financial status. Defendant Luciano Rangel ("Rangel") was Tupperware's Group President for Latin America from March 2017 through January 2020.

Lead Plaintiff, Srikalahasti Vagvala ("Vagvala") brings this consolidated class action shareholder suit against Defendants, asserting a claim for securities fraud under § 10(b) of the Securities Exchange Act and Rule 10b-5 against Tupperware and Rangel (Count I) and a control person liability claim under § 20(a) of the Securities Exchange Act against Stitzel, Goings, Poteshman, Harris, and Rangel (Count II).

The Third Amended Complaint's factual allegations largely mirror those in the First and Second Amended Complaints that the Court previously dismissed.[1] In short, the Complaint alleges that employees at Fuller, a Tupperware cosmetic sales division based in Mexico, falsified sales to improve Fuller's performance on paper. This, in turn, led to misstatements in Tupperware's financial disclosures with respect to Fuller's goodwill value. When these misstatements were corrected and Fuller's goodwill was impaired, Tupperware's stock price declined. Vagvala

[1] For a more detailed summary of the factual allegations, *see* Docs. 81 & 93.

argues that the Complaint alleges facts establishing that Rangel and a Fuller manager, Evaristo Hernandez ("Hernandez"),[2] knew about these false sales and that Rangel and Tupperware can be held liable for misrepresenting Tupperware's financials.

The main addition to the Third Amended Complaint is that it now references an amended Form 10-K/A that Tupperware issued on August 5, 2021. The 10-K/A states that the Securities and Exchange Commission opened an investigation into the practices at Fuller. It states that from 2019 through 2021, Tupperware identified "misstatements" that resulted "from the override of certain controls by management at the Company's Tupperware Mexico operations and from the misconduct of Fuller Mexico employees." Doc. 94 ¶ 14. Tupperware "terminated the individuals involved in the override" in 2020. *Id.* ¶ 15.

Defendants now move to dismiss all counts of the Complaint with prejudice, arguing that it again fails to state a claim for securities fraud.

## II. Legal Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g.*, *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any

---

[2] Hernandez is referenced throughout the Complaint but is not a party to this lawsuit.

exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

## III. Analysis

### A. Violation of Section 10(b) and Rule 10b-5 (Count I)

Defendants argue that the Third Amended Complaint fails to state a claim for securities fraud under § 10(b) of the Securities Exchange Act of 1934. In addition to the pleading requirements of Rule 8, alleged violations of § 10(b) that sound in fraud must also satisfy the particularity requirements of Federal Rule Civil Procedure 9(b). *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010). The Private Securities Litigation Reform Act (PSLRA) also requires private plaintiffs seeking monetary recovery to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).

#### *i. Misrepresentation*

Defendants argue that the Third Amended Complaint again fails to state a misrepresentation claim for a violation of § 10(b) and Rule 10b-5(b). To state a misrepresentation claim,

> a plaintiff must allege: (1) the existence of a material misrepresentation (or omission), (2) made with scienter (i.e., "a wrongful state of mind"), (3) in connection with the purchase or sale of any security, (4) on which the plaintiff relied, and (5) which was causally connected to (6) the plaintiff's economic loss.

*Thompson*, 610 F.3d at 633. The parties dispute whether the Third Amended Complaint adequately alleges scienter as to Rangel and Tupperware.

Vagvala argues that Rangel was expressly aware of the fake sales at Fuller.[3] In support, he cites to allegations that an anonymous employee heard one Fuller officer claim that both Hernandez and Rangel "directed the fake sales scheme." Doc. 94 ¶ 83. During a coffee break, that same employee heard another officer claim that Hernandez and Rangel said "you can't turn a ship in the middle of the trip" in apparent reference to the fake sales. *Id.* ¶ 85. And that employee also attended a parking lot meeting which "Fuller" convened to discuss staff discontent regarding product pushing. *Id.* ¶ 87. Another employee who attended the same meeting quotes Rangel as saying "as they were" and "for the sake of the company." *Id.* ¶ 86. That employee claims that Rangel was referring to the fake sales when he made those statements. *Id.*

These allegations fail to satisfy the particularity requirements of Rule 9 and the PSLRA. In analyzing scienter, "[a]ny 'omissions and ambiguities count against inferring scienter, . . . [and] the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically.'" *Brophy v. Jiangbo Pharms.,*

[3] Vagvala initially states that Rangel "recklessly disregarded the fraudulent sales scheme." But the thrust of his argument is that Rangel expressly knew about the sales, not that Rangel recklessly disregarded certain warning signs surrounding the Fuller activities. Further, neither the response nor the Complaint specify what facts or documents Rangel recklessly disregarded. *See Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1373 (S.D. Fla. 2015) ("there must be particularized allegations that the executive knew or was severely reckless in disregarding the true facts") (citing *Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1304–05 (11th Cir. 2015)).

*Inc.*, 781 F.3d 1296, 1304 (11th Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007)).

In one category, the allegations involve one employee hearing another employee accuse Rangel of being involved in the fake sales. But those bare accusations fail to allege any particular facts in support. The other category involves the series of statements at the parking lot meeting. The only allegation with any particularity is that Rangel told employees to "keep things 'as they were.'" *See* Doc. 94 ¶ 86. But there is no context for that statement or explanation as to why the anonymous employees believe it referred to the fake sales. The fact that this allegation remains unchanged after several iterations of the Complaint leads the Court to conclude that such foundation cannot be provided.

Viewed holistically, the Complaint lays out a series of conclusory insinuations and hearsay statements that accuse Rangel of carrying out fraud but fail to set forth specific allegations in support. Without more context or greater specificity, the Complaint fails to create a strong inference of scienter as to Rangel.[4] *See Pub. Emps.' Ret. Sys. of Miss. v. Mohawk Indus.*, --- F. Supp. 3d ---, 2021 WL 4546926, at *21 (N.D. Ga. 2021) (strong inference of scienter where the complaint

[4] As the Court will note further down, even if it did allege scienter, it cannot connect Rangel to any alleged misstatement in the financials and therefore fails to plead a claim for misrepresentation against him on that ground as well.

alleged that defendant "orchestrated, knew of, and received information about the fraudulent schemes," personally instructed employees to commit fraud, and received financial data pointing to the existence of such scheme).

The parties next dispute whether the Complaint pleads scienter as to Tupperware. It is possible to state a § 10(b) claim against a corporate defendant alone. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008) ("Even though [the complaint] failed to plead scienter adequately for any of the individual defendants, the amended complaint could, in theory, still create a strong inference that the corporate defendant . . . acted with the requisite state of mind."). Corporations, however, have no state of mind of their own, so "the scienter of their agents must be imputed to them." *Id.*

To determine whether a corporate official's scienter can be imputed to the corporation in a misrepresentation claim, a court must "look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like)." *Id.* (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)). To adequately plead corporate scienter, the complaint must create a strong inference that a corporate official was both "*responsible for* issuing the allegedly false public statements *and* [was] aware of the alleged fraud." *Id.* at 1254–55 (emphasis added). "It is not

enough to establish fraud on the part of a corporation that one officer makes a false statement that another knows to be false." *Southland*, 365 F.3d at 366 (quotation omitted).

Vagvala contends that both Rangel's and Hernandez's states of mind can be imputed to Tupperware.[5] Because the Complaint fails to allege scienter as to Rangel, his state of mind cannot be imputed to Tupperware. *See Mizzaro*, 544 F.3d at 1254–55. But even if it had, it fails to allege that Rangel was responsible for the misstatements at issue. The Complaint does not contain any allegations detailing Rangel's role with respect to Tupperware's public releases or his responsibilities with respect to reviewing financial data from Fuller. As the Eleventh Circuit stated in *Mizzaro*, the Court must look to whether an officer with scienter made a statement, ordered or approved the making of the statement, or furnished the data to be included. *See id.* at 1254. The Complaint is completely devoid of such allegations with respect to Rangel.

[5] Vagvala also sets forth the novel theory that Tupperware, through the various public disclosures, exhibited "consciousness of guilt." The briefing on this argument confusingly switches between arguing that Tupperware, *the corporation*, acted with a guilty conscience, and that Defendants collectively did the same. To the first, Tupperware is a corporate entity and, without a mind of its own, cannot act with a guilty conscience. *See Mizzaro*, 544 F.3d at 1254–55. And to the second, without specifying which defendant or defendants acted with this state of mind, the argument falls well short of the requirements of Rule 9 and the PSLRA.

The Complaint is similarly lacking as to Hernandez's responsibilities.[6] Vagvala again seems to argue that, since Hernandez is a senior officer in the Tupperware organization, that fact is sufficient to impute his scienter to Tupperware. But the Complaint needs to show that Hernandez is responsible for the misstatements, not just that his actions eventually resulted in the inaccuracy. Vagvala contends that the 10-K/A proves he was responsible, but all that form indicates is that some employees engaged in misconduct, those employees were terminated, and due to that misconduct, the false data ended up in the public disclosures. Assuming, without deciding, that the 10-K/A can be construed to refer to Hernandez, it does not specify that Hernandez furnished the false data for inclusion in the misstatements and does not support imputing his state of mind to Tupperware. *See Mohawk*, 2021 WL 4546926, at *21 (court was able to impute knowledge where the complaint alleged that an officer with scienter "furnished, approved and personally certified each quarter the purported accuracy of the information" contained in the misstatements at issue). Therefore, because the Complaint fails to impute the scienter of any officer to the corporation, it fails to plead scienter as to Tupperware.

[6] The Court again declines to address whether Hernandez acted with scienter. The Court simply assumes his scienter for the purpose of analyzing whether such knowledge could even be imputed to Tupperware here.

*ii. Scheme Liability*

Defendants also seek to dismiss Count I to the extent that it asserts a scheme liability claim under Rule 10b-5(a) and (c). As the Court explained previously, the main difference between a 10b-5(b) misrepresentation claim and a 10b-5(a) and (c) scheme liability claim is that, while 10b-5(b) involves "deceptive statements," 10b-5(a) and (c) scheme liability involves "deceptive conduct." *IBEW Local 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 856 (11th Cir. 2016) (quotation omitted). To plead scheme liability, a plaintiff must allege "intentional or willful conduct *designed to deceive or defraud investors* by controlling or artificially affecting the price of securities." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1306 (N.D. Ala. 2019) (quoting *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1273 (11th Cir. 2016)) (emphasis added).

Vagvala repeats the arguments he raised in response to the Motion to Dismiss the Second Amended Complaint and they remain unpersuasive here. The Complaint fails to allege that Rangle, Hernandez, or Tupperware engaged in a scheme aimed at deceiving or defrauding investors. Therefore, Count I will be dismissed as to this claim on the same grounds the Court discussed in its prior order. *See* Doc. 93 at 11–12.

### B. Violation of Section 20(a) (Count II)

Because the Third Amended Complaint fails to plead a primary violation under § 10(b), Vagvala's control person liability claim under § 20(a) will also be dismissed. *Galectin Therapeutics*, 843 F.3d at 1276 (A § 20(a) claim is for secondary liability only and "cannot exist in absence of a primary violation.") (quoting *Southland*, 365 F.3d at 383).

## IV. Conclusion

Plaintiff has attempted multiple versions of the Complaint in this case. He has had the opportunity to correct deficiencies in the Complaint following two orders of dismissal with leave to amend. Despite these opportunities, Plaintiff has been unable to meaningfully supplement the factual allegations and gives no indication that he can do so in the future. Accordingly, it is hereby **ORDERED** that Defendants' Motion to Dismiss (Doc. 98) is **GRANTED**. The Third Amended Complaint (Doc. 94) is **DISMISSED** with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 4, 2022.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party